Charles R. Toomajian III (SBN 302153)
 Email:  charles.toomajian@zimmreed.com
ZIMMERMAN REED LLP
1100 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844

[Additional Attorneys for Plaintiff Listed on Back Cover]

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHARLES WELCH, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>NORTH ATLANTIC IMPORTS, LLC d/b/a BLACKSTONE PRODUCTS, and DOES 1–10,<br><br>                    Defendants. | Civil Action No.: 2:25-cv-07106<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Charles Welch, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant North Atlantic Imports, LLC d/b/a Blackstone Products ("Defendant" or "Blackstone") and makes the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This is a case concerning deceptive representations and omissions made by Defendant through its misleading and unlawful pricing, sales, and discounting practices on its websites, which directly violate a California statute and deceive the reasonable consumer.

2.     Defendant Blackstone sells and markets grills and other cookware products online through the Blackstone website, https://blackstoneproducts.com/.

3.     Specifically, Blackstone lists many of its products as having continuous discounts ranging between $50–$200 off. Moreover, these discounts are actually false discounts intended to induce customers into purchasing their products, as the products are never actually sold at the higher strikethrough reference prices listed next to the "sale" price.

4.     The products at issue are all goods that have been offered at any time on Blackstone's website, at a sale or discounted price from a supposedly higher reference price (the "Products").

5.     Defendant's website lists various items on sale or discount, and presents a stricken supposedly former or prevailing market price next to the "sale" price. However, the former or prevailing market price listed next to the sales price is not actually the former or prevailing market price at which the product was sold in the previous three months. Instead, it is a false or inflated price used to trick consumers into believing they are receiving a discount on their purchase. It is false because the item has not been listed for sale or sold on the website in the previous three months at the listed former price.

CLASS ACTION COMPLAINT FOR DAMAGES

6. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

7. Section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertisement. Cal. Bus. & Prof. Code § 17501. Therefore, the statute specifically prohibits the type of fake discount employed by Defendant, where the advertised former price is not the prevailing price during the specified timeframe.

8. Upon investigation, all or nearly all of the reference prices on the website are false and misleading. Specifically, they are not former prevailing prices at which the products were offered on the websites, or the prevailing market prices, during the previous three (3) months.

9. Plaintiff—like hundreds of thousands of other customers across the United States—fell prey to Defendant's false, deceptive, and misleading discount scheme. As a result, Defendant has earned millions of dollars selling products at misrepresented discounts that do not actually exist.

10. When purchasing the Products, Plaintiff relied on Defendant's misrepresentations that the Products were on sale and were previously sold at the former strikethrough price listed next to the sale price. However, these products were not actually sold at the former or regular price listed on the website within the previous three months before the purchase. Therefore, the discount was false.

11. Defendant's conduct violated and continues to violate the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.; and the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§

1750, *et seq*. Defendant's conduct also constitutes negligent misrepresentation, and has unjustly enriched Defendant by the sale of these Products.

12.     Accordingly, Plaintiff brings this civil action to put an end to Defendant's illegal conduct. Through this class action lawsuit, Plaintiff seeks monetary damages, restitution, and declaratory and injunctive relief on behalf of the proposed Class.

## PARTIES

13.     Plaintiff Charles Welch is a citizen and resident of Los Angeles County, California.

14.     Defendant North Atlantic Imports, LLC is a Utah limited liability company and is headquartered in Illinois. Defendant's limited liability company members are all Utah residents. Defendant is an online retailer that sells grills, griddles, and other cookware products in California and across the United States.

15.     Defendants Does 1–10 were responsible in some manner for the injuries and damages caused to Plaintiff and the Class, but their identities and/or roles are not yet known.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which (1) there are at least 100 members, (2) the matter in controversy exceeds $5,000,000 exclusive of interest and costs, and (3) Plaintiff and members of the putative Class are citizens of a state that is different from the states in which Defendant are citizens.

17.     This Court has personal jurisdiction over Defendant because it has contacts with California that are so continuous and systematic that they are essentially at home in this state. Defendant sold Products to consumers in California, including Plaintiff. Defendant regularly conducts and solicits business in California, provides

products to persons in the State of California, maintains an interactive commercial website, offers to does ship products to California, allows customers in California to order products, and derives substantial revenue from customers in California.

18.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's and the Class Members' claims occurred in this District, and Defendant is subject to the Court's personal jurisdiction.

## BACKGROUND FACTS

19.    Defendant markets and sells grills, griddles, and other cookware products through its website.

20.    Defendant, through its website, has sold hundreds of thousands of units of merchandise to customers in California and nationwide.

## I.    Blackstone's Fake Discount Scheme

21.    Defendant creates the false impression that its Products' regular or former prices are higher than they truly are.

22.    On any given day, Products on Defendant's website are represented as being discounted from a higher reference price. On individual listing pages and category listing pages, the supposed mark-downs are represented to consumers by prominently displaying a "crossed-out" or strikethrough reference price next to a sale price and depicting the sale price in bold text adjacent to the reference price. Example screenshots are provided below:

23.    The above image is an example from Defendant's website that shows how it consistently lists its false discounts on the website across numerous products.

24.    The below sections describe further the types of deceptive sales schemes instituted by Defendant on its website.

25.    These pricing and advertising practices are deceptive and pressure consumers into purchasing products from Defendant at an inflated price. Defendant intends to mislead consumers into believing that they are getting a bargain by buying products from its website on sale and at a substantial and deep discount. For most, if not all, products listed at a discount, Defendant does not offer or sell the products on the website at the reference price for the three months immediately preceding the listing of the sale. Therefore, the reference price is artificially inflated and the advertised discounts are deceiving.

**A. Plaintiff Welch Purchased a Product that Was Falsely Advertised as Having a Discount.**

26.    On or around August 30, 2024, Plaintiff purchased a 22" Griddle with Hard Cover and Carry Bag (the "Product") for $179.10. He made this purchase while living in Los Angeles County, California.

27.    At the time of purchase, Blackstone advertised the Product as having a regular or former sale price of $249.00, and a list price of $199 purporting to be a

discount. When he made the purchase, Plaintiff also received an additional discount of $19.90 from the $199 list price, enabling him to purchase the Product for $179.10.

28.   At the time of purchase, Defendant represented on its website that this product was on sale at a discount, with a regular or former price of $249.00, listed as a strikethrough reference price next to the Product. However, this reference price was false, as Blackstone did not actually list or sell the Product for $249.00 for at least the three previous months prior to Plaintiff's purchase.

29.   The falsity of the reference price is demonstrated by the images below:

*February 22, 2024*



1  *March 4, 2024*



CLASS ACTION COMPLAINT FOR DAMAGES

1  *May 24, 2024*

2

3

4

5



6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES

1

*June 11, 2024*

2

3



4

5

6

7

8

9

10

*July 10, 2024*

11

12

13



14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

1   *July 18, 2024*

2

3   

4

5

6

7

8

9

10

11

12

13

14      30.     As evidenced by Defendant's own website, the 22" Griddle W/Hard

15   Cover & Carry Bag was not listed or sold at the strikethrough reference price of

16   $249.00 within the three months (and much longer) prior to Plaintiff's purchase.

17      31.     In fact, the same reference price was listed next to the Product from at

18   least February 2024 to the time Plaintiff purchased the Product in August 2024.

19      32.     Following Plaintiff's purchase, Defendant continued to list the Product

20   at the same false discount with the same strikethrough reference price for the next

21   four months, until they received Plaintiff's CLRA notice letter in December 2024:

22

23

24

25

26

27

28

*September 1, 2024*



*September 6, 2024*



CLASS ACTION COMPLAINT FOR DAMAGES

*September 9, 2024*



*September 11, 2024*



*September 14, 2024*



CLASS ACTION COMPLAINT FOR DAMAGES

*September 15, 2024*



*September 19, 2024*



CLASS ACTION COMPLAINT FOR DAMAGES

1    *September 20, 2024*

2

3    

4

5

6

7

8

9

10

11    *September 25, 2024*

12

13    

14

15

16

17

18

19

20    *September 29, 2024*

21

22    

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES

*October 1, 2024*



*October 2, 2024*



*October 4, 2024*



CLASS ACTION COMPLAINT FOR DAMAGES

*October 6, 2024*



*October 7, 2024*



CLASS ACTION COMPLAINT FOR DAMAGES

*November 8, 2024*



*December 13, 2024*



33.    Defendant represented that the Product had a certain regular or former price (the reference price) and that Plaintiff was receiving a substantial discount.

34.    Plaintiff relied on Defendant's representations on the website that the Products were being offered at a discount and that previously they were listed and sold on the website at the stated reference price within the three months immediately preceding Plaintiff Welch's purchase.

CLASS ACTION COMPLAINT FOR DAMAGES

35.    The above-listed Product Plaintiff purchased was not substantially marked down or discounted, and any discount he was receiving had been grossly exaggerated

36.    For at least the 90-day period prior to Plaintiff's purchase, and even months and years more, Defendant did not list or sell any of the Products for sale on its website at the reference prices.

37.    Plaintiff would not have purchased the Product, or would not have paid as much as he did, had Defendant been truthful. Plaintiff was persuaded to make his purchase because of the misleading sale based on false reference prices.

38.    Plaintiff continues to be interested in purchasing products like that offered by Defendant at discounted prices, but he will be unable to trust and rely on Defendant's advertising, so will not purchase the products from Defendant.

39.    Absent injunctive relief, Plaintiff cannot know whether Defendant's former and regular prices represent honest prices at which the products were listed on the website within at least the three months prior to their purchase, or if the Defendant's sales are perpetual and misleading.

40.    Upon information and belief, Defendant enacts the same false discount scheme with various Products listed on its website.

### B. The Reference Prices Are Not the Prevailing Market Price of the Products, Including During the Rolling 90-day Period Prior to the Offering and/or Purchase

41.    Separately, the reference prices advertised on Defendant's website are not the prevailing market prices of the Products.

42.    Some of the Defendant's discounted products are concurrently sold on the website and through other retailers. For these products, on information and belief, Defendant's advertised reference prices are higher than the prevailing market prices for the identical products. Because Defendant consistently sells the products at issue at prices significantly lower than its advertised former prices, there is no reasonable

basis to believe that Defendant consistently sells its products at prices below the prevailing market prices. Economic principles dictate that in competitive markets the actual prices offered by vendors selling the same item tend to converge to the market price.

43.    Upon information and belief the Products that are sold online are predominantly sold by Defendant on its website. To the extent the Products are sold through a third-party seller, the third-party seller's prices for the Product are not the prevailing market price. Furthermore, Defendant has an interest to, and upon information and belief does, exert control over the pricing of the sales of its products.

44.    On information and belief, Defendant's advertised reference prices are unsubstantiated and based on an undisclosed formula, or are outdated, or are cherrypicked and thus not representative of the prevailing market prices. On information and belief, Defendant does not independently verify that the reference prices are the prevailing market prices at which the Products are listed for sale by Blackstone or other retailers for a substantial period of time in substantial quantities. On information and belief, Defendant does not update the reference prices on a daily basis.

## II.    Research Shows That Reference Price Advertising Influences Consumer Behavior and Perceptions of Value

45.    The effectiveness of Defendant's deceitful pricing scheme is backed by longstanding research.

46.    "By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."[1] Thus, "empirical studies indicate that, as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search

---

[1] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992).

for a lower price decreases."[2] For this reason, the Ninth Circuit has held that a plaintiff making a claim of deceptive pricing (similar to the claim at issue here) has standing to pursue his claim against the Defendant retailer. In doing so, the Court observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013).

47.     "[D]ecades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal."[3] According to academic studies, "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high."[4]

48.     Further, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

49.     Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[5] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount,"

---

[2] *Id*. at 56.

[3] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002).

[4] *Id*.

[5] Khalid Saleh, *How Discounts Affect Online Consumer Buying Behavior*, Invesp, June 16, 2024, https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/ (last visited September 11, 2024).

while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[6]

50.    Another academic journal explains that "[r]eference price ads strongly influence consumer perceptions of value … Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when … the retailer highlights the relative savings compared with the prices of competitors … [T]hese bargain assurances (Bas) change consumers' purchasing behavior and may deceive consumers."[7]

51.    "[R]esearch has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."[8]

52.    "[R]eference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product."[9] This study

---

[6] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers PR NEWSWIRE (April 25, 2018), https://www.prnewswire.com/news-releases/retailmenot-survey-deals-and-promotional-offers-drive-incremental-purchases-online-especially-among-millennial-buyers-300635775.html#:~:text=In%2DLanguage%20News-,RetailMeNot%20Survey%3A%20Deals%20and%20Promotional%20Offers%20Drive%20Incremental%20Purchases%20Online,finding%20a%20coupon%20or%20discount. (last visited September 11, 2024).

[7] Joan Lindsey-Mullikin & ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011).

[8] Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003).

[9] Jerry B. Gotlieb & Cyndy Thomas Fitzgeral, *An Investigation Into The Effects of Advertised References Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. of App'd Bus. Res. 1 (1990).

also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."[10]

53.    Accordingly, research confirms that deceptive advertising through false reference pricing is intended to, and does, influence consumer behavior by artificially inflating consumer perceptions of an item's value and causing consumers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or purchase products from a specific retailer.

### A. Consumers Suffered Harm

54.    Based on Defendant's advertisements, reasonable consumers would expect that the listed regular prices are the regular prices at which Defendant usually sells its Products.

55.    Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose regular or former price is the advertised regular or former price and that they will receive the advertised discount from the regular or former purchase price

56.    Plaintiff and consumers paid a "price premium" for the Products. If the reference prices were omitted from the product listings, Plaintiff would not have purchased the Products.

57.    Also, as further described above, Plaintiff and consumers are more likely to buy the Products if they believe that the product is on sale and that they are getting Products with a higher regular or former price at a substantial discount.

58.    Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its

---

[10] *Id.*

CLASS ACTION COMPLAINT FOR DAMAGES

Products. As a result, Defendant can charge a price premium for its Products that it would not be able to charge absent the misrepresentations described above.

59.     Therefore, Defendant's Products not only have a market value lower than the promised regular or former price; the value of the Products is also lower than the "sale" price. By using false reference pricing and false limited time sales, Defendant artificially drives up demand for the Products and by extension drives up the price of the Products. As a result, consumers were harmed because they received a product worth less than the price paid. Reasonable consumers would not have paid the prices charged had they known that products were rarely, if ever, offered for sale on the website at the reference prices.

60.     An example illustrates this point. Assume a company knows a product will sell in the marketplace at $30. But to increase revenue, the company advertises the product as having a "regular" price of $100 and being on "sale" at 60% off (i.e., $60 off). Because consumers value products based on the regular price, and a sale conveys additional savings, the company can sell that $30 product for $40. Defendant has done so.

## III.   Defendant's Deceptive Pricing Practices Violate Federal and California State Law

61.     The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). Under 16 C.F.R. § 233.1, which is titled Former Price Comparisons, the FTC prohibits such misleading price comparisons as the ones employed by Defendant:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the *former price* is the actual, bona fide price at which the article was offered to the public *on a regular basis for a reasonably substantial period of time*, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious

– for example, where an ***artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction*** – the "bargain" being advertised ***is a false one***; the purchaser is not receiving the unusual value he expects.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

(c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50 in order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level—$7.50—and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" ***This is obviously a false claim***. The advertised "bargain" is not genuine.

(d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he ***never offered the article at all***; he might feature a price which was ***not used in the regular course of business***, or which was ***not used in the recent past*** but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was ***not maintained for a reasonable length of time***, but was immediately reduce.

16 C.F.R. § 233.1 (emphasis added).

62.    The FTCA expressly prohibits the advertising of former fictitious prices, like the scheme employed by Defendant, regardless of whether the product advertisements and representations use the words "regular", "original", or "former" price:

(e) If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.

16 C.F.R. § 233.1.

63.    Defendant's pricing scheme directly violates the FTCA.

64.    In addition, Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

65.    Section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertisement. Cal. Bus. & Prof. Code § 17501.

66.    In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

67.     And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

68.     Here, as described in detail above, Defendant makes untrue and misleading statements about its prices. Defendant advertises regular prices that are not its regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices without the intent to sell goods having those former prices. Defendant made false and misleading statements of fact concerning the reason for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engaged in unlawful and deceptive business practices.

## CLASS ALLEGATIONS

69.     Plaintiff brings this action individually and on behalf of all others similarly situated. The proposed class is defined as:

**Class:**

All persons in the State of California who, during the applicable limitations period, purchased one or more items from www.blackstoneproducts.com, at a represented discount from a higher reference price.

70.     Excluded from the Class is Defendant, its subsidiaries and affiliates, officers, directors, the members of their immediate families, and any entity in which any Defendant has a controlling interest, to include the legal representatives, heirs, successors, or assigns of any such excluded party. Also excluded are the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

71.     Plaintiff reserves the right to modify or amend the definition of the proposed Class if necessary, before this Court determines whether certification is appropriate.

72.     This case is properly brought as a class action under Fed. R. Civ. P. 23(b)(2) and (b)(3) and all requirements are met for the reasons set forth in the following paragraphs.

73.     *Numerosity*. The members of the Class are so numerous that separate joinder of each member is impracticable. Upon information and belief, and subject to discovery, the Class consist of many thousands of members, the identity of whom are within the exclusive knowledge of Defendant and can be ascertained only by resorting to Defendant's records, discovery, and other third-party sources.

74.     *Commonality*. There are numerous questions of law and fact common to the Class relating to Defendant's business practices challenged herein, and those common questions predominate over any questions affecting only individual Class members. The common questions include, but are not limited to:

o   Whether Defendant's labeling, advertising, and marketing of the Products is false and misleading;

o   Whether Defendant advertised false reference prices on Products offered on the websites;

o   Whether Defendant advertised price discounts from the false reference prices on the Products offered on the websites;

o   Whether the Products listed on Defendant's websites were offered at their reference price for a reasonably substantial period of time during the three months prior to being offered at prices that were discounted from their reference prices;

o   Whether the Products listed on Defendant's websites were offered at their reference price within the three months preceding purchases by Plaintiff and class members;

- Whether Defendant's misrepresentations were material to reasonable consumers;
- Whether Defendant engaged in unlawful or unfair conduct prohibited by the California UCL;
- Whether Defendant engaged in conduct prohibited by the California FAL;
- Whether Defendant violated the CLRA's prohibition on unfair methods of competition and/or unfair and deceptive practices;
- Whether Defendant violated the FTCA;
- Whether Defendant harmed Plaintiff and members of the Class;
- the proper measure of damages; and
- the declaratory and injunctive relief to which the Class is entitled.

75.    *Typicality.* Plaintiff's claims are typical of the claims of the other Class members in that they arise out of the same wrongful business practices engaged in by Defendant, as described herein.

76.    *Adequacy of Representation.* Plaintiff is an adequate representative of the Class because Plaintiff has sustained damages as a result of Defendant's uniform conduct. In addition:

- Plaintiff is committed to the vigorous prosecution of this action individually and on behalf of and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions;
- There is no hostility of interest between Plaintiff and the unnamed Class members;
- Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

CLASS ACTION COMPLAINT FOR DAMAGES

o   Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal work associated with this type of litigation.

77.   *Predominance.* The questions of law and fact common to the Class as set forth in the "commonality" allegation above predominate over any individual issues. As such, the "commonality" allegations are restated and incorporated herein by reference.

78.   *Superiority.* A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation and since the financial resources of Defendant are significant, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Defendant's misconduct will proceed without remedy. In addition, even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

79.   All conditions precedent to bringing this action have been satisfied and/or waived.

**FIRST CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**
**(On behalf of Plaintiff and the Class)**

80.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

81.    Plaintiff and Defendant are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17200.

82.    The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

83.    Defendant violated the UCL by engaging in "unlawful, unfair, and fraudulent business ats or practices" and engaging in "unfair, deceptive, untrue or misleading advertising," including advertising false and deceptive reference prices on its Products. Cal. Bus. & Prof. Code § 17200.

a.  *Unlawful Prong*

84.    As a result of engaging in the conduct alleged in this Complaint, Defendant has violated the UCL's proscription against engaging in "unlawful" conduct by virtue of their violations of the following laws:

(1)    **California Bus. & Prof. Code § 17501**: As further detailed in this Complaint, Defendant violated California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 and 17501.

(2)    **The Federal Trade Commission Act**: As detailed in this Complaint, Defendant violated 16 C.F.R. §§ 233.1 and 233.5.

(3)    **Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770(a)**: As alleged below, Defendant's conduct, individually and collectively, violates section 1770(a)(5), (7), (9), and (13) of the CLRA. Therefore, Defendant has also violated the UCL's "unlawful" provision.

85.     Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date. Unless restrained and enjoined, Defendant will continue to engage in the unlawful conduct described herein.

86.     Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the Class. As described herein, Defendant made false and deceptive advertisements and representations regarding the reference prices on the Products it claimed were on sale. But for Defendant's unlawful and unfair conduct, Plaintiff and Class members would not have purchased the Products.

87.     Plaintiff has suffered injury in fact and have lost money as a result of Defendant's conduct.

88.     Accordingly, Plaintiff and Class Members seek restitution from Defendant of all money obtained from Plaintiff and the Class as a result of Defendant's unlawful acts.

**b. *Unfair Prong***

89.     As a result of engaging in the conduct alleged herein, Defendant has violated the UCL's proscription against "unfair" business practices.

90.     Under the UCL, a business act or practice is "unfair" if the Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

91.     Defendant's unfair conduct alleged in the Complaint is illegal, deceptive, unethical, and unscrupulous. Under federal and state law, making false and deceptive claims about products being marketed and sold to consumers violates the UCL.

92.     Defendant's deceptive marketing gave consumers the false impression that their products were regularly listed or sold on the websites for a substantially higher price in the recent past than they were and, thus, led to the false impression that Defendant's products were being sold at a discount to a regular price.

93.    Furthermore these acts and practices offend public policy by violating the CLRA and the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code 17500, *et seq*.

94.    Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers.

95.    Therefore, Defendant's conduct was and continues to be "unfair."

96.    Defendant's violations of the UCL continue to this day. Unless restrained and enjoined, Defendant will continue to engage in the unfair conduct described herein. Plaintiff would consider buying again from Defendant's website if he knew that the pricing misrepresentations were halted and if he had the opportunity to evaluation the actual prevailing price and actual discount prices of the Product.

97.    Defendant's violations of the UCL continue to this day. Unless restrained and enjoined, Defendant will continue to engage in the unfair conduct described herein.

98.    Defendant's conduct caused and continues to cause substantial injury to Plaintiff, as well as the Class members.

99.    The harm to Plaintiff and members of the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the unfair conduct described herein.

100.    Accordingly, Plaintiff and the Class seeks restitution from Defendant of all money obtained from Plaintiff and the Class members as a result of Defendant's unfair competition.

### c. *Fraudulent Prong*

101.    As a result of engaging in the conduct alleged herein, Defendant has violated the UCL's proscription against "fraudulent" business practices.

102.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant

affirmatively misrepresented the reference prices of products which, in turn, misled and deceived consumers into believing that they were buying products at substantially discounted prices. Defendant's deceptive marketing gave consumers the false impression that its products were regularly listed or sold on the website for a substantially higher price in the previous three months. Because Defendant misled Plaintiff and members of the Class, Defendant's conduct was "fraudulent."

103.  Defendant's advertisements concerning the reference price of Products on its websites were fraudulent business acts in violation of the UCL. These acts were reasonably likely to deceive consumers, and in fact did deceive Plaintiff and Class members and induce them into purchasing Defendant's Products.

104.  Defendant knew its Products were not actually sold at the higher reference price for a three month period of time preceding Plaintiff's and Class members' purchases.

105.  Defendant had a duty to disclose the truth about its pricing deception, including that the reference prices advertised on its website were not, in fact, prices at which Defendant's items were listed or sold on the website in the previous three months, but in truth, the products never (or rarely) were offered or sold at the reference prices.

106.  Defendant made these statements with the intention that Plaintiff would see them and rely on them to purchase its Products, and, in fact, Plaintiff did rely on Defendant's fraudulent misrepresentations on Defendant's websites when purchasing the Product.

107.  If not for Defendant's fraudulent acts and practices, Plaintiff would not have purchased the Products.

108.  As a result, Plaintiff and Class Members suffered substantial injury and lost money due to Defendant's conduct.

109.  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. As a result of

1  Defendant's fraudulent business acts and practices, Defendant has and continues to

2  fraudulently obtain money from Plaintiff and Class Members.

3      110.   Plaintiff requests that this Court cause Defendant to restore this

4  unlawfully, unfairly, and fraudulently obtained money to them, and members of the

5  Class, to disgorge the profits Defendant made on these transactions, and to enjoin

6  Defendant from violating the UCL or violating it in the same fashion in the future.

## SECOND CAUSE OF ACTION
**VIOLATION OF CALIFORNIA'S FALE ADVERTISING LAW ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq***
**(On behalf of Plaintiff and the Class)**

10      111.   Plaintiff hereby incorporates by reference the allegations contained in

11  the preceding paragraphs of this Complaint.

12      112.   Defendant violated Cal. Bus. & Prof. Code §§ 17500 and 17501.

13      113.   The California's False Advertising Law ("FAL"), Cal. Bus. & Prof.

14  Code § 17500, *et seq.*, by states, in part, that:

> It is unlawful for any person, firm, corporation or association, or any
> employee thereof with intent directly or indirectly to dispose of real or
> personal property or to perform services, professional or otherwise, or
> anything of any nature whatsoever or to induce the public to enter into
> any obligation relating thereto, to make or disseminate or cause to be
> made or disseminated before the public in this state, or to make or
> disseminate or cause to be made or disseminated from this state before
> the public in any state, in any newspaper or other publication, or any
> advertising device, or by public outcry or proclamation, or in any other
> manner or means whatever, including over the Internet, any statement,
> concerning that real or personal property or those services, professional
> or otherwise, or concerning any circumstance or matter of fact
> connected with the proposed performance or disposition thereof, **which
> is untrue or misleading, and which is known, or which by the
> exercise of reasonable care should be known, to be untrue or
> misleading…**

Cal. Bus. & Prof. Code § 17500. (emphasis added).

114.   A separate section of the FAL, Cal. Bus. & Prof. Code § 17501, also provides:

> For the purposes of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> No price shall be advertised as a ***former price*** of any advertised thing, unless the alleged former price was the ***prevailing market price*** as above defined within ***three months next immediately preceding*** the publication of the advertisement of unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501. (emphasis added).

115.   As used in the FAL:

(a) The term "prevailing market price" refers to the "retail price" if the offer is at retail." *Id.*

(b) The term "advertised thing" refers to the exact same product offered—***not*** an equivalent or similar product. *People v. Superior Ct. (J.C. Penney Corp.)*, 24 Cal App. 5th 376, 412 (2019) ("if the advertisement specifies a precise item—say, by reference to name, brand, or other distinctive features … the market and therefore the market price is potentially determined on the basis of sales of ***that item only***.") (emphasis added).

(c) The term " 'former price' … includes but is not limited to the following words and phrases when used in connection with advertised prices: 'formerly—,' 'regularly—,' 'usually—,' 'originally—,' 'reduced from ___,' was ___ now __,' '___% off.'" 4 Cal. Code Regs., § 1301 (emphasis added).

(d) The "three-month period is properly construed as a 'rolling' period, that is, one whose beginning and end changes each day, thus requiring a daily recalculation of the prevailing market price during the three-month period." *People v. Superior Ct. (J.C. Penney Corp.)*, 24 Cal App. 5th 376, 416 n.26 (2019) (emphasis added).

116. Defendant violated Cal. Bus. & Prof. Code § 17500.

117. Defendant violated Cal. Bus. & Prof. Code § 17501.

118. As alleged more fully above, Defendant advertises former prices along with discounts on its websites. Defendant does this, for example, by crossing out a higher price (e.g. $150) and displaying it next to a lower, discounted price. Reasonable consumers would understand prices denoted as regular prices from which time-limited discounts are calculated to denote "former" prices, i.e., the prices that Defendant charges before the discount went into effect.

119. The reference prices advertised as former or regular prices on Defendant's websites are not former or regular prices under the FAL. Defendant rarely, if ever, offered Products on the websites at the reference prices within three months immediately preceding the publication of the reference prices. Additionally, the reference prices shown were not the prevailing market prices for the Products in the three months immediately preceding the publication.

120. Defendant did not verify that the advertised reference prices were the prevailing market prices within the preceding three months. On information and belief, Defendant had no policies or procedures to verify and update the reference prices on a daily basis.

121. Defendant's deceptive marketing practice gave consumers the false impression that the Products were regularly offered and sold for a substantially higher price in the recent past than they were, and, thus, led to the false impression that Defendant's Products were worth more than they were.

122.   Defendant knew that its advertised reference prices for the Products sold on its website were untrue and/or misleading. Defendant knew that such Products had rarely, if ever, been offered or sold on the website at the reference prices.

123.   Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the false reference prices when purchasing Defendant's Products. Defendant's misrepresentations were a substantial factor in the Plaintiff's purchase decisions.

124.   Plaintiff relied on Defendant's false advertisements with regard to the Products, at the time of purchase.

125.   As a result of Defendant's violation of the FAL, Plaintiff and Class Members suffered substantial injury and lost money.

126.   Pursuant to Cal. Bus. & Prof. Code § 17535, this Court has the power to award such equitable relief, including but not limited to an order declaring the reference prices listed on Defendant's Products' to be unlawful, an order enjoining Defendant from engaging in any such further unlawful conduct, and an order directing Defendant to refund to Plaintiff and Class members all monies wrongfully collected as a result of its false advertisements.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT ("CLRA")
### (Cal. Civ. Code §§ 1750, *et seq*.)
### (On behalf of Plaintiff and the Class)

127.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

128.   Plaintiff and members of the Class are "consumers," as that term is defined by Civil Code § 1761(d), because they purchased Products for personal, family, or household purposes.

129.   Plaintiff and Class members have engaged in a "transaction" with Defendant, as that term is defined by Civil Code § 1761(e).

130.   The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for purposes of the CLRA, and was undertaken by Defendant in transactions intended to result in, and which resulted in, the sale of goods or services to consumers.

131.   As described more fully above, Defendant made and disseminated untrue and misleading statements of fact in its advertisements to class members. Defendant did this by using fake reference prices, i.e., reference prices that are not the prevailing market price, and/or were not the prevailing market price within the three months preceding the publication of the discount, and advertising fake discounts.

132.   As a result of Defendant's conduct, Plaintiff and Class members purchased Defendant's Products for their use.

133.   By engaging in the conduct described herein, Defendant has violated the following subdivision of California Code § 1770(a) by:

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have

…

(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

(9) Advertising goods or services with intent not to sell them as advertised.

[and]

(13) Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.

134.   Regarding section 1770(a)(13), Defendant made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because (a) no true price reductions existed in that Defendant's Products were rarely,

if ever, offered for sale and/or sold on the websites at the higher reference prices, let along on a regular basis within the three months immediately preceding the publication of the reference prices, (b) the reference prices Defendant advertised in connection with its Products are not prevailing market prices because, on information and belief, the Products were not sold elsewhere at the reference prices on a regular basis within the three months immediately preceding the publication of the reference prices, and (c) Defendant falsely represents the Products as on sale for a limited time when in truth it appears they are perpetually sold at the advertised "sale" prices.

135.   With regard to sections 1770(a)(5), (7), and (9), Defendant advertised and represented Products on the websites with the "intent not to sell" them as advertised and misrepresenting product characteristics and standards because, as explained herein, the false reference prices advertised in connection with products offered on the website misled and continue to mislead customers into believing the Products were previously offered for sale and/or sold on the websites at the higher reference prices during the three months preceding the advertisement.

136.   Defendant intended for Plaintiff and the Class to rely on its aforementioned unfair and deceptive acts and practices, including the misrepresentations and omissions alleged above.

137.   Defendant's violations of the CLRA proximately caused injury in fact to Plaintiff and the Class.

138.   Plaintiff reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiff would not have purchased the item he purchased from Defendant. Plaintiff's reliance was a substantial factor in causing him harm.

139.   Pursuant to Cal. Civ. Code § 1782(d), Plaintiff, individually and on behalf of the Class, seeks a Court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

140.   On October 4, 2024, pursuant to Cal. Civ. Code § 1782(a), Defendant was sent in writing by certified mail, notice of the violations of Section 1770 of the CLRA, which notification demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

141.   Defendant failed to rectify or agree to rectify the problems associated with the actions detailed above or give notice to all consumers within 30 days of receipt of the CLRA notice. Accordingly, Plaintiff seeks damages, as permitted and appropriate.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff and members of the Class, respectfully request that the Court:

   a.   Certify this case as a class action, designating Plaintiff as class representatives and designating the undersigned as Class Counsel;

   b.   Declaring that Defendant's conduct violates the statutes set forth above;

   c.   Award Plaintiff and the Class actual damages in an amount according to proof;

   d.   Award Plaintiff and the Class restitution in an amount to be proven at trial;

   e.   Award Plaintiff and the Class pre-judgment interest in the amount permitted by law;

   f.   Award Plaintiff and their attorneys fees and costs as permitted by law;

   g.   Declare Defendant's practices outlined herein to be unlawful;

   h.   Grant equitable and/or injunctive relief, including to enjoin Defendant from engaging in the practices outlined herein;

   i.   Grant Plaintiff and the Class a trial by jury;

   j.   Grant leave to amend these pleadings to conform to evidence produced at trial; and

CLASS ACTION COMPLAINT FOR DAMAGES

k.  Grant such other relief as the Court deems just and proper, including all forms of relief provided for under the UCL, CLRA, and FAL.

## JURY DEMAND

Plaintiff, by counsel, demand a trial by jury.

Dated: August 1, 2025                Respectfully submitted,

*/s/ Charles R. Toomajian III*
**ZIMMERMAN REED LLP**
Charles R. Toomajian III
(SBN 302153)
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 341-0400
charles.toomajian@zimmreed.com

**ZIMMERMAN REED LLP**
Jessica M. Liu (SBN 358713)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
jessica.liu@zimmreed.com

**JENNINGS & EARLEY PLLC**
Christopher D. Jennings*
Tyler E. Ewigleben*
Winston S. Hudson*
500 President Clinton Ave.,
Suite 110
Little Rock, AR 72201
Tel: (501) 255-8569
chris@jefirm.com
tyler@jefirm.com
winston@jefirm.com

*Pro Hac Vice* applications to be submitted.

*Counsel for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT FOR DAMAGES